LAWRENCE WOOTEN *v.* ABRAM HEISLER
(AC 23290)

Lavery, C. J., and Schaller and Berdon, Js.

Argued January 22—officially released May 11, 2004

*Robert C. Elfont* filed a brief for the appellant (plaintiff).

*Paul E. Pollock*, for the appellee (defendant).

### Opinion

LAVERY, C. J. The plaintiff, Lawrence Wooten, appeals from the summary judgment rendered by the trial court on each of his three claims in favor of the defendant, Abram Heisler, his former attorney.[1] On appeal, the plaintiff claims that the court improperly (1) applied the common-law doctrine of champerty and maintenance, (2) found that his claim violated the public policy promoted by the doctrine of champerty and maintenance, and (3) rendered summary judgment

---

[1] The plaintiff filed a brief with this court, but failed to appear at oral argument. Consequently, only the defendant presented oral argument.

despite the presence of genuine issues of material fact.[2] We disagree and, accordingly, affirm the judgment of the trial court.[3]

The following facts, as set forth in the plaintiff's complaint and the exhibits attached to the defendant's motion for summary judgment, are relevant to the resolution of the appeal. The plaintiff retained the defendant, an attorney licensed to practice law in Connecticut, to represent him in a civil action to recover damages the plaintiff sustained in a motor vehicle accident. The defendant subsequently initiated a negligence action against Anthony Brainard and Cablevision of Connecticut, Inc., on behalf of the plaintiff. At some point, the plaintiff discharged the defendant, and on October 30, 1996, the plaintiff retained the Law Offices of Sheri Paige and Associates (law firm) to represent him in the negligence action. The case was settled in the amount of $70,000.

The plaintiff then filed the present action. The plaintiff claimed that the defendant never had communicated with the plaintiff's physicians regarding his medical condition. Furthermore, the plaintiff repeatedly alleged that the defendant had failed to advise him as to the medical treatment and testing he needed to diagnose properly and to document completely the full extent of his injuries. The plaintiff claimed that had the defendant properly attended to the negligence action, it would have been worth $150,000.

The plaintiff set forth three causes of action against the defendant. The first count was based on a theory of negligence, specifically, legal malpractice. Count two

[2] The defendant argues that the summary judgment should be affirmed on the alternate ground that the plaintiff's allegations of negligence against the defendant are contrary to public policy. Because we determine that the court properly rendered summary judgment, we do not reach that issue.

[3] The third issue is dispositive and, therefore, we limit our discussion to that issue.

alleged a claim of breach of contract. The third count claimed a breach of fiduciary duty. The crucial allegation, common to all three counts, was that the defendant's failure to advise the plaintiff properly that he should obtain the necessary medical treatment and testing and the subsequent documentation of the diagnosis and extent of his injuries, prevented him from recovering $150,000.

The defendant filed a motion for summary judgment. The defendant's motion stated in relevant part that he was entitled to summary judgment "on the grounds that the plaintiff's allegations fail to state a cause of action against an attorney since an attorney's duty does not extend to advising his client as to medical treatment and on the additional ground that the giving of such advice in connection with a personal injury action violates the doctrine of maintenance and champerty and is a violation of public policy."[4]

The court reviewed certain medical records that were attached to the defendant's motion and concluded that summary judgment was appropriate. Specifically, the court determined, on the basis of the supporting exhibits, that the plaintiff had undergone medical examinations and various treatments while he was represented by the defendant. Additionally, the documents revealed

---

[4] "Not so long ago, a considerable area of the law of legal ethics was given over to the mysteries of the Macbethian witches of the common law who stirred the cauldron of despised litigation-maintenance, champerty, and barratry. Those were both common-law crimes that any person, lawyer or nonlawyer, could commit, as well as grounds for severe discipline of lawyers. While their origins are ancient, they exist today only vestigially. . . . A few years before they were defanged, Lord Denning defined maintenance as 'improperly stirring up litigation and strife by giving aid to one party to bring or defend a claim without just cause or excuse.' . . . Champerty is simply a specialized form of maintenance in which the person assisting another's litigation becomes an interested investor because of a promise by the assisted person to repay the investor with a share of any recovery." C. Wolfram, Modern Legal Ethics (1986) § 8.13, pp. 489–90.

that various diagnostic options, including magnetic resonance imaging (MRI) and arthroscopic examination of the plaintiff's left knee, were discussed. The court concluded, therefore, that summary judgment was warranted on the ground that the plaintiff in fact had obtained the necessary testing and treatment to diagnose the extent of his injuries. In a footnote, the court stated that it "need not reach the public policy argument, although it seems readily apparent to the court that an attorney should not be advising her client concerning medical treatment for the purpose of enhancing the value of a case." This appeal followed.

"The pathway to our analysis is well trodden. Summary judgment is appropriate where the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the court's decision on a motion for summary judgment is a legal determination, our review on appeal is plenary." (Citation omitted; internal quotation marks omitted.) *Caffery* v. *Stillman*, 79 Conn. App. 192, 195, 829 A.2d 881 (2003).

"Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]. . . . Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment. See Practice Book [§ 17-46]." (Internal quotation marks

omitted.) *Bebry* v. *Zanauskas*, 81 Conn. App. 586, 589, 841 A.2d 282 (2004).

"To succeed on a motion for summary judgment, [t]he movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . [A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party. . . . [A] directed verdict may be rendered only where, on the evidence *viewed in the light most favorable to the nonmovant,* the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." (Emphasis in original; internal quotation marks omitted.) *Dugan* v. *Mobile Medical Testing Services, Inc.,* 265 Conn. 791, 815, 830 A.2d 752 (2003).

"The appellate courts of this state have set forth the law that applies in an action alleging legal malpractice. Malpractice is commonly defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services. . . . [T]he plaintiff must prove (1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages." (Citations omitted; internal quotation marks omitted.) *Dubreuil* v. *Witt,* 80 Conn. App. 410, 420, 835 A.2d 477 (2003), cert. granted on other grounds, 268 Conn. 903, 845 A.2d 407 (2004). With the foregoing principles in mind, we turn to the specifics of the present case.

The defendant attached to his motion for summary judgment a report from Martin Ross, a physician. That report detailed Ross' examination of the plaintiff that

occurred nearly one year after the motor vehicle accident. It also indicated that the plaintiff had been treated by an internist, Tao Nan Chi, who prescribed various exercises to rehabilitate the plaintiff's knee. The plaintiff was scheduled for a return visit in two weeks. The report concluded by stating that "[t]*he options of MRI of the lumbar spine and MRI of the left knee were discussed with [the plaintiff] as well as the option of arthroscopy of the left knee.* [The plaintiff] is considering his options and we will see his response to medication." (Emphasis added.) In a letter to Chi, Ross stated that he and the plaintiff had "discussed options of further investigation for this condition should [the plaintiff] so desire."

On August 14, 1997, Ross sent a letter to the law firm, indicating that he had examined the plaintiff after approximately a two year gap in treatment. That letter again indicated that Ross had discussed "options for additional testing" with the plaintiff in 1995. After an MRI was performed on the plaintiff's left knee,[5] Ross recommended that the plaintiff undergo left knee arthroscopy.

In his complaint, the plaintiff alleged that the defendant had "failed to advise the plaintiff to obtain the appropriate medical testing and treatment necessary to completely and properly diagnose and document the full extent of his injuries, such that he could be fully compensated therefore, nor did [the defendant] confer with [the plaintiff's] doctors." The uncontroverted and undisputed evidence, however, indicates that the plaintiff did, in fact, obtain the necessary and appropriate medical testing and treatment to completely and properly diagnose and document his injuries. The medical

---

[5] In all of the medical reports attached to the defendant's motion, the discussion focused on the plaintiff's left knee. Three times in the 1997 Ross letter, however, there are references to the plaintiff's right knee. We interpret those inconsistencies as nothing more than that of a scrivener's error.

reports clearly and unequivocally demonstrate that various diagnostic and treatment options, including an MRI and arthroscopic surgery, were discussed with the plaintiff by his physicians, but the plaintiff elected, for whatever reason, to opt for other treatment.

As noted by the court, the plaintiff's argument that the defendant should have advised the plaintiff to undergo an MRI in 1995 so that the underlying negligence case would have had a greater value is without merit. To be sure, an attorney has the obligation to act with reasonable diligence; Rules of Professional Conduct 1.3; to communicate with the client to the extent reasonably necessary to allow the client to make informed decisions; Rules of Professional Conduct 1.4; and to provide advice on such legal and nonlegal matters that are relevant to the client's situation. Rules of Professional Conduct 2.1. Nevertheless, those obligations do not extend to offering medical advice to a client, particularly for the purpose of increasing the value of a negligence claim.

The plaintiff has not provided us with any statutory authority or case law that imposes a duty on an attorney to advise a client as to the appropriate course of medical diagnosis or treatment. Indeed, an attorney may commit malpractice if he or she does *absolutely nothing* to protect a client's interests. See *Paul* v. *Gordon*, 58 Conn. App. 724, 728, 754 A.2d 851 (2000). Such a scenario, however, is absent from the present case. The reports attached to the defendant's motion clearly establish that the plaintiff was examined and diagnosed by a physician and chose to forgo certain medical tests. We conclude that under those facts and circumstances, a reasonable trier of fact could not reach any conclusion other than a defendant's verdict. Accordingly, the court properly rendered summary judgment in the defendant's favor.

The judgment is affirmed.

In this opinion the other judges concurred.