# MARK PARISI *v.* YALE UNIVERSITY
## (AC 25254)

Flynn, DiPentima and Stoughton, Js.

Argued April 4—officially released June 21, 2005

*Frank J. Kolb, Jr.,* with whom, on the brief, was *Joseph Marotti,* for the appellant (plaintiff).

*Kristen Sotnik Falls,* for the appellee (defendant).

STOUGHTON, J. The plaintiff, Mark Parisi, appeals from the decision of the workers' compensation review board (board) affirming the dismissal of his claim by the workers' compensation commissioner (commissioner). On appeal, the plaintiff claims that the board improperly affirmed the dismissal because (1) the commissioner improperly relied on certain medical testimony that should have been precluded and (2) the plaintiff was unfairly surprised by a defense raised only after that medical testimony was submitted. We affirm the decision of the board.

The following facts, relevant to the plaintiff's appeal, were found by the commissioner. The plaintiff had been employed by Yale University, the defendant, as a supervisor in the university photo services department. In 1985, he was transferred to a new position as the supervisor of custodial services for Yale University. He managed buildings and supervised crews that cleaned, maintained and repaired chemical laboratories, museums and athletic areas. He alleged that his crews used paint chemicals, cleaning chemicals and stripping chemicals in the course of their duties. He owned a sailboat while he was employed at Yale University. He maintained the boat by varnishing, waxing, painting and oiling it. He was exposed to sand and paint while working on the boat.

The plaintiff alleged that he began to develop shortness of breath in October, 2000, and that he was treated at an emergency room in October or November, 2000. Shortly thereafter, on November 9, 2000, the plaintiff was examined by John Toksoy, a physician. The plaintiff

gave a history that he had been experiencing shortness of breath due to cooking smells, smoke, dust and perfume. The history included a note that he had walked through a smoke-filled bar on November 7, 2000, and developed shortness of breath resulting in an evaluation and testing at Yale-New Haven Hospital. Toksoy restricted the plaintiff's work duties by advising him to avoid inhaling chemicals such as cleaning and buffing compounds.

On December 7, 2000, the plaintiff was examined by Dorothy van Rhijn, a physician at Yale Health Services. Van Rhijn recommended evaluation by occupational environmental medicine and noted that the plaintiff had had many exposures to chemicals that were not job related and that he was out of work because he could not be exposed to cleaning chemicals.

On April 18, 2001, the plaintiff was examined by Jay Mobo, a physician at the Yale University occupational and environmental clinic. After a number of tests with negative or normal results, Mobo diagnosed the plaintiff with multiple chemical sensitivity syndrome, and indicated that its pathophysiology is ill-defined and that it is a clinical diagnosis. Mobo opined that there is no curative treatment and recommended that the plaintiff minimize his exposure to chemicals. The plaintiff had given a history to Mobo that his symptoms increased with exposure to dust, perfumes, pollen, cooking fumes and cold weather, and exposure to cleaning solvents, floor finishing products and dust in his work.

Although the plaintiff ceased working on November 8, 2000, Yale University did not terminate his employment until November 8, 2001. The plaintiff sought compensability of his claims for multiple chemical sensitivity, payment for medical treatment, interest and attorney's fees. On October 18, 2001, the defendant submitted a form 43 notice indicating that it would chal-

lenge the plaintiff's claim. The notice provided that "any alleged multiple chemical sensitivity syndrome is personal and not causally related to employment."

At a hearing, held on May 1, 2002, the commissioner asked counsel to state their claims. Counsel for the plaintiff stated that the plaintiff had been employed at Yale University for a number of years, suffered from multiple chemical sensitivity syndrome, was unable to work and must avoid exposure to chemicals used in his employment as a custodial supervisor. The plaintiff, however, did not present evidence regarding what chemicals he may have been exposed to at Yale University. Counsel for the defendant stated that the defendant's position was that if the plaintiff suffered from multiple chemical sensitivity syndrome, his work activities at Yale University were not a substantial factor in causing that condition and that exposure to other elements and substances caused him to suffer from that apparent condition.

After the plaintiff concluded his testimony, counsel for the defendant announced that she wanted to produce all the records from the treating physicians and that she had arranged for an examination of the plaintiff by Marc Bayer, chief of the division of medical toxicology at the University of Connecticut School of Medicine, to be conducted on May 20, 2002, to address the multiple chemical sensitivity condition. The commissioner gave the defendant until May 31, 2002, to produce all of the evidence, at which time the record would close. Counsel for the plaintiff stated that he had not been notified of the examination and took the position that the evidence should have been available and presented on the date set for the hearing.

On May 20, 2002, Bayer examined the plaintiff. Bayer was deposed on May 29, 2002. The plaintiff told Bayer that various substances were irritating to him such as

smoke fumes, gasoline vapor, cigarette smoke, perfumes and cologne, which cause dizziness, shortness of breath and difficulty with memory and concentration. Bayer opined that the plaintiff did not suffer from multiple chemical sensitivity syndrome and that multiple chemical sensitivity is basically a syndrome of symptoms that has no objective findings on laboratory evaluation and is most likely a somatoform disorder or a psychiatric disorder. Bayer opined that multiple chemical sensitivity is not a toxicologically or chemically induced dysfunction of the body that leads to symptoms and that the plaintiff's symptoms were not based on organic disease of the body, but on either heightened anxiety, panic, depression or a somatoform disorder. He opined that the plaintiff's exposure to chemicals at Yale University did not contribute to his symptomatology, and that the term multiple chemical sensitivity had been discounted by most medical organizations and was not recognized by the Centers for Disease Control in Atlanta, Georgia, because it lacks case definition and objective diagnostic criteria. That testimony was submitted by May 31, 2002, as directed by the commissioner.

On June 10, 2002, the plaintiff filed a motion to preclude the testimony of Bayer or to allow time for rebuttal evidence, alleging that before the deposition, the defense had been that the plaintiff's multiple chemical sensitivity syndrome was not contracted at work, while after the deposition, the defense was that the syndrome did not exist. The defendant objected, claiming that the motion was inappropriate because the hearing record had closed and that it had been clear from the outset that the defendant had never admitted that the plaintiff suffered from multiple chemical sensitivity disorder or accepted the legitimacy of the diagnosis.

On December 2, 2002, the commissioner concluded, inter alia, that although the plaintiff alleged that he

developed multiple chemical sensitivity due to chemical exposure in his employment, exposure to cooking fumes, smoke, perfume and pollen could cause the plaintiff's symptoms. There was no evidence regarding any specific chemicals to which the plaintiff may have been exposed at Yale University.

The plaintiff appealed to the board, claiming that the commissioner improperly made findings without ruling on the plaintiff's motion to preclude and that the plaintiff was unable to contest the new defense raised by the defendant. On September 26, 2002, oral arguments were heard before the board. On March 4, 2004, the board affirmed the decision of the commissioner. The plaintiff then appealed to this court. Additional facts will be set forth as necessary.

The plaintiff claimed in his appeal to the board, as he does to this court, that the defendant indicated at the hearing that the defense was that although the plaintiff suffered from multiple chemical sensitivity disorder, it was not contracted at Yale University, that the defendant asked for a continuance for the submission of additional evidence, that the plaintiff reserved his right to object and did so by a motion to preclude, and that he was unable to mount a response to the new defense raised by Bayer that there is no such thing as multiple chemical sensitivity disorder.

At the pretrial preceding in February, the commissioner had noted that the defendant was going to take a deposition. The commissioner asked at the hearing in May who was to be deposed and whether it was "an examination or something like that." Counsel for the defendant stated: "My recollection of that is twofold. An examination and a deposition." Counsel for the plaintiff took no position on the discussion, stating that he had no present recollection. After further discussion, the commissioner allowed the defendant until the end of

May to produce all of the evidence, including the results of the examination. He directed that Bayer's report be admitted unless objected to, in which event the defendant would have to depose him. There was no objection by the plaintiff beyond that which had been expressed previously. He did reserve his right to see Bayer's report, to depose him possibly and to have him testify before the commissioner.

The commissioner had given the defendant until May 31, 2002, to obtain all of the evidence at which time the record would close. The motion and the response thereto were not filed until June, 2002, after the commissioner had closed the record. The procedure set out by the commissioner had not been objected to, and neither party had requested an extension of time for any purpose. The record does not show that any action was taken on the late filed motion. The board affirmed the decision of the commissioner, and the plaintiff has appealed from the decision by the board.

The standard of review in workers' compensation appeals is well established. "When the decision of a commissioner is appealed to the board, the board is obligated to hear the appeal on the record of the hearing before the commissioner and not to retry the facts. . . . The commissioner has the power and duty, as the trier of fact, to determine the facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . Our scope of review of the actions of the board is similarly limited. . . . The role of this court is to determine whether the . . . [board's] decision results from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Citation omitted; internal quotation marks omit-

ted.) *Sprague* v. *Lindon Tree Service, Inc.*, 80 Conn. App. 670, 673–74, 836 A.2d 1268 (2003).

The plaintiff has not challenged any of the facts found by the commissioner as having been found without evidence nor has the plaintiff sought to add any findings. His claim is that Bayer's testimony should not have been admitted because it introduced a new defense and came as a surprise. The defendant never conceded the existence of the condition and had always denied that the plaintiff's condition arose out of his employment. The form 43 notice that the defendant would contest liability specifically stated in part that any alleged multiple chemical sensitivity syndrome was personal and not causally related to employment. In addition, the commissioner is not bound by the common law or statutory rules of evidence or procedure but shall make inquiry in a manner that is best calculated to ascertain the substantial rights of the parties. *LaPia* v. *Stratford*, 47 Conn. App. 391, 400, 706 A.2d 11 (1997).

The board concluded, and we agree, that there was ample evidence outside of Bayer's report and deposition to support the commissioner's dismissal of the claim. "[T]o recover for an injury under the [Worker's Compensation Act, General Statutes § 31-275 et seq.] a plaintiff must prove that the injury is causally connected to the employment. To establish a causal connection, a plaintiff must demonstrate that the claimed injury (1) arose out of the employment, and (2) in the course of the employment. . . . The determination of whether an injury arose out of and in the course of employment is a question of fact for the commissioner." (Internal quotation marks omitted.) *Labadie* v. *Norwalk Rehabilitation Services, Inc.*, 84 Conn. App. 220, 226, 853 A.2d 597, cert. granted on other grounds, 271 Conn. 925, 859 A.2d 579 (2004). The plaintiff's history taken by Toksoy was that he began to develop shortness of breath in October, 2000, and had been experiencing shortness of

breath due to exposure to cooking smells, smoke, dust and perfume. He had many environmental exposures to chemicals that were not employment related. His history as given to Mobo was that his symptoms increased with exposure to dust, perfumes, pollen, cooking fumes and cold weather. Multiple chemical sensitivity is a chemical diagnosis the pathophysiology of which is ill-defined. There was no evidence that work-related exposure to a particular chemical or chemicals caused multiple chemical sensitivity syndrome. Furthermore, there was no evidence of the specific chemicals that the plaintiff was exposed to at Yale University. The evidence did establish a sensitivity to many kinds of air pollutants, but it did not establish that the plaintiff's condition was causally connected to his employment.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.