IDA TESTONE *v.* C. R. GIBSON COMPANY ET AL.
(AC 28918)

Bishop, DiPentima and Foti, Js.

Argued December 2, 2008—officially released May 5, 2009

*Daniel D. Skuret III*, for the appellant (plaintiff).

*John P. Clarkson*, with whom, on the brief, was *Matthias J. DeAngelo*, for the appellees (defendants).

*Opinion*

DiPENTIMA, J. In this workers' compensation case, the plaintiff, Ida Testone, appeals from the workers' compensation review board's (board) decision affirming the findings and conclusion of the workers' compensation commissioner for the fifth district (commissioner), in which the commissioner denied the plaintiff's claims for temporary partial disability benefits and attorney's fees. The principal issue in this appeal is the commissioner's admission and use of three independent

medical examination reports. Specifically, the plaintiff claims that the board should have determined that the commissioner improperly admitted the three reports and improperly relied on those reports in denying the plaintiff temporary partial disability benefits. The plaintiff also claims that the board improperly affirmed the commissioner's ruling denying the plaintiff's motion to correct and the determination that the plaintiff had not suffered a compensable recurrence or relapse under General Statutes § 31-307b. We affirm the decision of the board.

The plaintiff suffered a compensable injury to her right hand on June 12, 2000.[1] As of early 2002, the defendant C. R. Gibson Company[2] was paying benefits to the plaintiff for this injury. On January 17, 2002, the plaintiff's treating physician, Robert W. Nolan, issued a report stating that the plaintiff had reached maximum medical improvement and could be discharged from therapy. The report also stated that the plaintiff would have a permanent restriction on work activities of no repetitive use of her right hand. On the basis of Nolan's report, the defendant filed a form 36[3] seeking to reduce the plaintiff's benefits from temporary total disability to temporary partial disability and to require the plaintiff to perform job searches. The plaintiff objected to the form 36, and, following a formal hearing, the commissioner approved the form 36, effective March 25,

[1] The plaintiff had also suffered a compensable injury to her right shoulder in 1999. This injury is not at issue in the present appeal.

[2] Travelers Property and Casualty, the insurance carrier for C. R. Gibson Company, also was named as a defendant. For simplicity, we refer in this opinion to C. R. Gibson Company as the defendant.

[3] "Form 36 is a notice to the compensation commissioner and the claimant of the intention of the employer and its insurer to discontinue compensation payments. The filing of this notice and its approval by the commissioner are required by statute in order properly to discontinue payments. General Statutes §§ 31-296, 31-296a, 31-300." (Internal quotation marks omitted.) *D'Amico* v. *Dept. of Correction*, 73 Conn. App. 718, 720 n.2, 812 A.2d 17 (2002), cert. denied, 262 Conn. 933, 815 A.2d 132 (2003).

2002. The defendant paid the plaintiff for a 5 percent permanent partial disability to her wrist. On February 25, 2002, Balazs Somogyi, a physician, performed an independent medical examination of the plaintiff. Somogyi's report concluded that the plaintiff was at maximum medical improvement and that "[t]he present symptoms and functional limitations are out of proportion to the injury reported." On November 21, 2002, the plaintiff was seen by Nolan, who maintained his opinion that the plaintiff had reached maximum medical improvement and recommended that she continue job searches.

From May, 2002, to March, 2005, eight informal hearings and three preformal hearings were held regarding the plaintiff's claims. On June 18, 2003, the plaintiff was seen by Marvin S. Arons, a physician, for an evaluation of an injury to her shoulder, which had occurred in 1999. Arons opined that the plaintiff had not reached maximum medical improvement and recommended that she be seen by a shoulder specialist before treatment could begin for symptoms related to her wrist injury. One year later, on June 30, 2004, Arons reported that the plaintiff's medical conditions had not changed. The plaintiff began receiving temporary partial disability benefits on August 2, 2004. On October 25, 2004, Arons issued an additional report, in which he diagnosed the plaintiff with chronic upper extremity pain syndrome and recommended that she undergo a wrist arthrogram.[4] The plaintiff subsequently had a wrist arthrogram performed and underwent surgery on March 31, 2005.

In 2005, the plaintiff sought a formal hearing to open the commissioner's decision on the form 36 and claimed

[4] An arthrogram is defined as "[i]maging of a joint following the introduction of a contrast agent into the joint capsule to enhance visualization of the intraarticular structures." Stedman's Medical Dictionary (27th Ed. 2000) p. 150.

entitlement to temporary partial disability benefits from March 14, 2002, through August 1, 2004. The plaintiff also sought attorney's fees, interest and penalties for the discontinuance of temporary partial benefits on March 14, 2002, and for undue delay and unreasonable contest of medical treatment and payment of the benefits. On April 26, 2005, a formal hearing was held before the commissioner. On January 5, 2006, the commissioner issued her findings and denied the plaintiff's requests. Specifically, the commissioner denied the plaintiff's claim for temporary partial disability benefits between March 25, 2002, and August 1, 2004, concluding that the substantial weight of the medical authority did not support awarding the plaintiff those benefits. The commissioner further concluded that there was no undue delay in the provision of medical treatment or unreasonable contest of the claim and that the plaintiff was not entitled to attorney's fees, interest or penalties.

The plaintiff filed a motion to correct, which the commissioner denied in an order dated February 27, 2006. The plaintiff filed an appeal with the board, which affirmed the commissioner's decision.[5] This appeal followed.

Before turning to the merits of the plaintiff claims, we identify our standard of review in workers' compensation appeals. "The commissioner is the sole trier of fact and [t]he conclusions drawn by [the commissioner]

[5] We note that in her motion to correct, the plaintiff requested that the commissioner add, delete or modify ninety-eight facts in the commissioner's findings of fact. Similarly, in the plaintiff's appeal to the board, she listed sixteen "reasons of appeal." As this court has noted previously when a multitude of issues are raised on appeal, "pursuit of so large a number of issues forecloses the opportunity for a fully reasoned discussion of pivotal substantive concerns [by the plaintiff]. A shotgun approach does a disservice both to this court and to the party on whose behalf it is presented. . . . Multiplicity hints at lack of confidence in any one [issue] . . . ." (Citation omitted; internal quotation marks omitted.) *LaBow* v. *LaBow*, 65 Conn. App. 210, 211, 782 A.2d 200, cert. denied, 258 Conn. 943, 786 A.2d 430 (2001).

from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . The review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is [obligated] to hear the appeal on the record and not retry the facts. . . . On appeal, the board must determine whether there is any evidence in the record to support the commissioner's finding and award." (Internal quotation marks omitted.) *Anderson* v. *R & K Spero Co.*, 107 Conn. App. 608, 613, 946 A.2d 273 (2008); *O'Reilly* v. *General Dynamics Corp.*, 52 Conn. App. 813, 816, 728 A.2d 527 (1999). Our review of the board's actions is similarly limited. "[However] [t]he decision of the [board] must be correct in law, and it must not include facts found without evidence or fail to include material facts which are admitted or undisputed. . . . Put another way, the board is precluded from substituting its judgment for that of the commissioner with respect to factual determinations." (Internal quotation marks omitted.) *Anderson* v. *R & K Spero Co.*, supra, 614; see *Tracy* v. *Scherwitzky Gutter Co.*, 279 Conn. 265, 272, 901 A.2d 1176 (2006).

I

The plaintiff's principal challenge addresses the commissioner's admission and use of three independent medical examination reports in denying the plaintiff's claim of temporary partial disability benefits. We conclude that the commissioner improperly relied on the reports for a broader purpose than that for which they were admitted. We conclude, however, that such use was harmless error.

At the formal hearing, the defendant sought to introduce a report dated July 23, 2002, by Christopher Lena, a physician, who performed an independent medical

examination of the plaintiff. The plaintiff objected to the admission of the report on the basis that she would not have an opportunity to cross-examine Lena. The defendant stated that it was not offering the report for its truth but as a defense to the issue of undue delay and unreasonable contest. The commissioner overruled the plaintiff's objection and admitted the report into evidence. The defendant then sought to introduce a report dated December 16, 2003, by Ira Spar, a physician, who also performed an independent medical examination of the plaintiff. The defendant offered the report "just to prove as to . . . what Travelers [Property and Casualty, the defendant's workers' compensation insurer] did and what they were told in the course of this case." The commissioner overruled the plaintiff's objection and admitted the report into evidence. Finally, the defendant sought to introduce a March 9, 2004 report by Michael Kaplan, a physician, who also performed an independent medical examination of the plaintiff. The defendant stated that it was also offering the report as a defense to the plaintiff's claim of undue delay. The plaintiff objected on the grounds of lack of opportunity to cross-examine the author and relevance, as the examination was performed for the plaintiff's 1999 shoulder injury. The commissioner overruled the plaintiff's objection and admitted the report "only so far as it is relevant to the wrist and hand injury and to the issue of undue delay . . . ."

In her findings, under a heading entitled "Temporary Total Disability Benefits,"[6] the commissioner referred to the conclusions reached by each physician in the three independent medical reports. On appeal, the plaintiff argues that she was deprived of her procedural due

---

[6] The record and transcript of the formal hearing clearly indicate that the plaintiff sought and both parties addressed the issuance of temporary *partial* disability benefits. We therefore conclude, as did the board, that the reference to temporary *total* disability benefits is a scrivener's error. See *Wooten* v. *Heisler*, 82 Conn. App. 815, 821 n.5, 847 A.2d 1040 (2004).

process rights when the reports were admitted without providing her with an opportunity to cross-examine their authors. She further argues that this violation caused her to suffer prejudice, as the commissioner relied on the reports in denying the plaintiff's claim for temporary partial disability benefits as well as other unspecified claims.

Administrative hearings, such as those held before a workers' compensation commissioner, are informal and are not bound by the common-law or statutory rules of evidence and procedure. *Bryan* v. *Sheraton-Hartford Hotel,* 62 Conn. App. 733, 740, 774 A.2d 1009 (2001); see General Statutes § 31-298. Instead, "the commissioner . . . shall make inquiry in a manner that is best calculated to ascertain the substantial rights of the parties." *Parisi* v. *Yale University,* 89 Conn. App. 716, 723, 874 A.2d 852 (2005). "Nonetheless, procedural due process is a requirement of adjudicative administrative hearings, including those held before work[ers'] compensation commissioners . . . ." *Balkus* v. *Terry Steam Turbine Co.,* 167 Conn. 170, 177, 355 A.2d 227 (1974). "Due process of law requires not only that there be due notice of the hearing but that at the hearing the parties involved have a right to produce relevant evidence, and an opportunity to know the facts on which the agency is asked to act, to cross-examine witnesses and to offer rebuttal evidence. *Huck* v. *Inland Wetlands & Watercourses Agency,* [203 Conn. 525, 536, 525 A.2d 940 (1987)] . . . ." (Citation omitted; internal quotation marks omitted.) *Bryan* v. *Sheraton-Hartford Hotel,* supra, 740. "[A]dmission of hearsay material such as letters [or reports] without an opportunity to cross-examine is ordinarily a deprivation of procedural due process." *Balkus* v. *Terry Steam Turbine Co.,* supra, 177. This court will not disturb the commissioner's finding, however, when there is sufficient evidence to support it independent of that hearsay evidence. Id., 177–78;

see *Barron* v. *City Printing Co.*, 55 Conn. App. 85, 91, 737 A.2d 978 (1999).

Here, the defendant proffered the reports in support of its defense to the claim of undue delay and unreasonable contest. The plaintiff objected, specifically citing the lack of opportunity for cross-examination. The commissioner then admitted the three reports limited to the issue of undue delay. For this limited purpose the reports were not inadmissible as hearsay because they were not offered to prove the truth of the content of the reports. See Conn. Code Evid. § 8-1 (3); *Dinan* v. *Marchand*, 279 Conn. 558, 572, 903 A.2d 201 (2006). The defendant explicitly offered the reports "to prove . . . what Travelers [Property and Casualty] did and what they were told in the course of this case." Therefore, the reports were admitted properly as to the issue of undue delay.

As the board recognized in its decision, it was undisputed that the evidentiary use of the three reports was limited solely to the plaintiff's claim of undue delay. Yet, a review of her findings indicates that the commissioner used the three reports substantively to decide the plaintiff's entitlement to temporary partial disability benefits. Thus, the reports were considered beyond the limited purpose for which they were admitted, namely, for the issue of undue delay. This was improper. *Damick* v. *Planning & Zoning Commission*, 158 Conn. 78, 80–81, 256 A.2d 428 (1969) (improper for court to use evidence in its findings beyond limited scope for which it permitted evidence to be introduced); see *State* v. *Thompson*, 266 Conn. 440, 476–77, 832 A.2d 626 (2003) (improper for prosecutor to use admissible prior inconsistent statement for substantive purposes when such use was beyond scope of admissibility); C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 1.27.2, p. 70 (evidence admitted for limited purpose cannot be used for another purpose). In considering the reports for

substantive purposes, the commissioner deprived the plaintiff of her right to due process. See *Bryan* v. *Sheraton-Hartford Hotel*, supra, 62 Conn. App. 741. Nonetheless, such an error is harmless if the record reveals sufficient evidence, independent of the three reports, to support the board's decision affirming the commissioner's findings. See *Parisi* v. *Yale University*, supra, 89 Conn. App. 723 (no reversible error when board properly concluded commissioner had ample evidence to support dismissal of claim outside of contested evidence); *Barron* v. *City Printing Co.*, supra, 55 Conn. App. 91 (board properly affirmed commissioner's decision when commissioner's findings supported by sufficient evidence independent of disputed letter).

Here, the commissioner evaluated the evidence and concluded that the weight of the medical authority did not support the award of temporary partial disability benefits. The board affirmed the commissioner's decision, reasoning that it must defer to the commissioner's evaluation of the contested evidence. In its decision, however, it referred to the commissioner's substantive findings on the reports without noting their limited admissibility. Nonetheless, on the basis of the record before us, we conclude that there was sufficient evidence, absent the three reports, to substantiate the commissioner's finding that the plaintiff was not entitled to temporary partial disability benefits. Specifically, the evidence before the commissioner included a report by the plaintiff's treating physician, dated January 17, 2002, stating that the plaintiff had reached maximum medical improvement, had a permanent partial disability rating of 5 percent and could return to work in a light duty capacity. The evidence also included a report by Somogyi, in which he concluded that the plaintiff had reached maximum medical improvement, that the "present symptoms and functional limitations are out of proportion to the injury" and that she was capable of light

work capacity with restrictions on the use of her right wrist. The plaintiff's treating physician wrote an additional report on November 21, 2002, maintaining his position that the plaintiff had reached maximum medical improvement and recommending that she continue her job search.

Temporary partial disability benefits under General Statutes § 31-308 (a) are available "until the injured worker has reached maximum medical improvement . . . ." 1 A. Sevarino, Connecticut Workers' Compensation After Reforms (3d Ed. 2006) § 6.06.3, p. 970; see also *Rayhall* v. *Akim Co.*, 263 Conn. 328, 332, 357–58, 819 A.2d 803 (2003) (plaintiff who sustained injury to more than one body part entitled to receive temporary partial disability benefits until all injured members achieve maximum medical improvement); *Murray* v. *Mass Mutual Life Ins. Co.*, No. 4590 CRB-1-02-11 (November 20, 2003) (commissioner properly awarded plaintiff benefits pursuant to § 31-308 [a] when evidence established plaintiff had not reached maximum medical improvement). The only evidence that did not conclude that the plaintiff had reached maximum medical improvement were two reports from Arons. "The burden of proving entitlement to benefits under § 31-308 (a) rests on the claimant, and [t]he trial commissioner must decide whether a claimant has met that burden as a factual matter, and possesses the sole authority to determine which, if any, of the medical, documentary or testimonial evidence is reliable." (Internal quotation marks omitted.) *Shepard* v. *Wethersfield Offset, Inc.*, 98 Conn. App. 682, 687, 910 A.2d 993 (2006), cert. denied, 281 Conn. 911, 916 A.2d 51 (2007). We conclude, therefore, that the commissioner was presented with sufficient evidence, absent the contested reports, to determine that the plaintiff had reached maximum medical improvement and was therefore not entitled to disability benefits under § 31-308 (a).[7]

---

[7] The plaintiff appears to raise a claim regarding the defendant's need to file a form 36 stating that she had reached maximum medical improvement.

## II

The plaintiff next claims that the board improperly affirmed the commissioner's denial of the plaintiff's motion to correct. We disagree.

In her motion to correct, the plaintiff requested that the commissioner amend her findings by separating her findings regarding the plaintiff's claim for attorney's fees and interest from her findings regarding temporary partial disability benefits and that all references to the three independent medical examinations be deleted from the findings regarding the benefits. In total, the plaintiff sought the addition of eighty-nine findings to the commissioner's findings of fact as well as the modification or deletion of nine additional findings. The commissioner denied the plaintiff's motion, noting that it was "nothing more than an attempt to reargue [the] case in a different light" rather than a request to correct specific findings. The board agreed with the commissioner that the motion to correct was an effort to reargue the case and concluded that the commissioner properly denied the motion. On appeal, the plaintiff argues that the commissioner failed to "delineate the separate issues," that the three reports were used beyond their scope and, that, as a result, the commissioner committed reversible error. We disagree with the plaintiff.

In concluding that the board properly declined to order the commissioner to correct her findings, this

We do not reach this claim, however, as the plaintiff has failed to brief the issue adequately. See *Rock Rimmon Grange #142, Inc.* v. *The Bible Speaks Ministries, Inc.*, 112 Conn. App. 1, 7–8, 961 A.2d 1012 (2009). To the extent that the plaintiff is arguing that notice of the filing of the February 19, 2002 form 36 was improper, we note that she received a full evidentiary hearing on that form 36. See *Krol* v. *A. V. Tuchy, Inc.*, No. 4613 CRB 4-03-1 (January 29, 2004), aff'd, 90 Conn. App. 346, 876 A.2d 597 (2005) (full evidentiary hearing on subject of form 36 renders moot any alleged procedural deficiencies regarding form 36).

court, in *D'Amico* v. *Dept. of Correction*, 73 Conn. App. 718, 812 A.2d 17 (2002), cert. denied, 262 Conn. 933, 815 A.2d 132 (2003), noted: "We will not change the finding of the commissioner unless the record discloses that the finding includes facts found without evidence or fails to include material facts which are admitted or undisputed. . . . It [is] the commissioner's function to find the facts and determine the credibility of witnesses . . . and a fact is not admitted or undisputed merely because it is uncontradicted. . . . A material fact is one that will affect the outcome of the case." (Citation omitted; internal quotation marks omitted.) Id., 727–28. Thus, a motion to correct is properly denied when the additional findings sought by the movant would not change the outcome of the case. See *Brinson* v. *Finlay Bros. Printing Co.*, No. 4307 CRB-1-00-10 (November 1, 2001), aff'd, 77 Conn. App. 319, 823 A.2d 1223 (2003); *Fusco* v. *J. C. Penney Co.*, No. 1952 CRB-4-94-1 (March 20, 1997).

Here, the plaintiff's motion to correct sought to conform the commissioner's findings to the plaintiff's version of the facts. It is the commissioner, however, who has the discretion to determine the facts. See *Chesler* v. *Derby*, 96 Conn. App. 207, 220, 899 A.2d 624, cert. denied, 280 Conn. 909, 907 A.2d 88 (2006). Because the findings and the award of the commissioner were supported by the evidence and included all material facts, we conclude that the board properly affirmed the commissioner's denial of the plaintiff's motion to correct. See id., 220–21; *D'Amico* v. *Dept. of Correction*, supra, 73 Conn. App. 728–30.

III

The plaintiff's final claim is that the board improperly affirmed the commissioner's determination that the plaintiff had not suffered a compensable recurrence or

relapse under § 31-307b.[8] We decline to review this claim because the plaintiff has failed to provide us with an adequate record for review.

As is always the case, the appellant, here the plaintiff, bears the burden of providing a reviewing court with an adequate record for review. See *Cable* v. *Bic Corp.*, 270 Conn. 433, 442, 854 A.2d 1057 (2004). This burden applies equally to the appellant in workers' compensation cases. See id. It is well settled that the role of this court "is not to guess at possibilities, but to review claims based on a complete factual record developed by a [fact finder]. . . . Without the necessary factual and legal conclusions furnished by the [fact finder] . . . any decision made by us respecting [an appellant's claim] would be entirely speculative. . . . It is, therefore, the responsibility of the [appellants] to move for an articulation or clarification of the record when the [fact finder] has failed to state the basis of a decision. . . . [W]here the trial court's decision is ambiguous, unclear or *incomplete*, an appellant must seek an articulation . . . or this court will not review the claim." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Manifold* v. *Ragaglia*, 94 Conn. App. 103, 124–25, 891 A.2d 106 (2006).

The issue of whether the plaintiff suffered a recurrence or relapse was not among the issues before the commissioner at the formal hearing. Although it was mentioned in passing by the defendant's counsel, the commissioner did not make any findings with regard to the issue. The plaintiff listed the issue of entitlement to benefits under § 31-307b in her appeal to the board. The board, however, did not address this claim in its

---

[8] General Statutes § 31-307b provides in relevant part: "If any employee who receives compensation under section 31-307 returns to work after recovery from his or her injury and subsequently suffers total or partial incapacity caused by a relapse from the recovery from, or a recurrence of, the injury, the employee shall be paid a weekly compensation . . . ."

decision affirming the findings and award of the commissioner, and the plaintiff did not file a motion for articulation. Thus, we are left without an adequate record for review of this claim. See *Bragdon* v. *Sweet*, 102 Conn. App. 600, 605, 925 A.2d 1226 (2007).

The fact that the plaintiff filed a motion to correct requesting the addition of findings regarding the plaintiff's alleged recurrence or relapse does not relieve the plaintiff of her duty to provide an adequate record for our review. Our Supreme Court, in *Cable* v. *Bic Corp.*, supra, 270 Conn. 433, concluded that in workers' compensation cases, motions for articulation are not synonymous with motions to correct. Id., 446. The court reasoned that motions to correct are "the proper vehicle for requesting corrections or additions to the factual findings based upon the evidence in the record [whereas] motions for articulation generally are employed when the basis of the commissioner's conclusion is unclear." (Citation omitted; internal quotation marks omitted.) Id. The court noted that although motions for articulation are not specifically provided for in the regulations, such motions previously have been considered and granted by workers' compensation commissioners as well as by the board. Id., 444. Here, in the absence of an articulation, we are unable to determine whether the commissioner addressed this particular claim. Accordingly, we decline to review this claim. See *Stiffler* v. *Continental Ins. Co.*, 288 Conn. 38, 52–53, 950 A.2d 1270 (2008); *Manifold* v. *Ragaglia*, supra, 94 Conn. App. 125.

The plaintiff also argues that the commissioner improperly denied the plaintiff's motion to correct on the issue of whether the plaintiff had suffered a recurrence or relapse. As we concluded in part II, the findings and award of the commissioner were supported by the

evidence and included all the material facts. The commissioner, therefore, properly denied the motion to correct. See *Chesler* v. *Derby*, supra, 96 Conn. App. 220–21. To the extent that the plaintiff sought the reasoning for the commissioner's omission of this issue from her findings of fact, the plaintiff should have filed a motion for articulation. See *Cable* v. *Bic Corp.*, supra, 270 Conn. 444. Therefore, we cannot conclude that the commissioner improperly denied the plaintiff's motion to correct.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.