## LUCILLE J. NAPPO *v.* MERRILL LYNCH CREDIT CORPORATION
### (AC 30494)

Robinson, Alvord and Dupont, Js.

Argued May 26—officially released September 7, 2010

*Richard P. Weinstein,* with whom, on the brief, was *Nathan A. Schatz,* for the appellant (plaintiff).

*Kathleen Morrison Grover,* with whom was *P. Jo Anne Burgh,* for the appellee (defendant).

*Opinion*

ALVORD, J. The plaintiff, Lucille J. Nappo, appeals from the judgment of the trial court upholding the validity of a mortgage on her residential property in Avon held by the defendant, Merrill Lynch Credit Corporation. The plaintiff claims that the mortgage should be discharged because the evidence presented at trial failed to establish that she owed the defendant a debt. We disagree and affirm the judgment of the trial court.

The plaintiff is the sole owner of a house located at 16 Hitchcock Lane in Avon. In April, 1999, she applied to the defendant for a $250,000 home equity credit line, to be secured by a mortgage on her property in Avon. Her application was approved, and on August 23, 1999, she executed an agreement and promissory note establishing the credit line and an open-end mortgage in favor of the defendant. The execution of the mortgage was witnessed by an attorney and by Patricia Nappo, the plaintiff's daughter-in-law. On the same date, the plaintiff requested in writing that the defendant issue checks for the credit line and mail them to her at her house in Avon. She also received and signed a notice of right to cancel[1] and a fair credit billing act disclosure.[2]

---

[1] The notice of right to cancel provides in relevant part: "We have agreed to establish an open-end credit account for you, and you have agreed to give us a security interest in your home as security for the account. . . ."

[2] The fair credit billing act disclosure provides in relevant part: "If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill.

By the end of 2000, over $200,000 had been drawn against the credit line by check, and the plaintiff's account was in default. The defendant commenced collection efforts, which included making frequent calls to the plaintiff and sending her letters indicating the account's default status. In January, 2004, the account balance, then approximately $240,000, still remained unpaid. The plaintiff sent the defendant a letter, stating: "The home at 16 Hitchcock Lane, Avon, has been in my name since 1979. I have received a foreclosure notice, and I would like some time to bring the account current, which I will be able to do probably within the next six months. I am at the end of a divorce action that began almost two years ago. My husband, who had had a good income, was convicted of a crime and was incarcerated for about a year. He had moved out of the house and has not worked in over two years. What assets we had at that time, he spent on his legal fees or were frozen by the government to pay off an [Internal Revenue Service] debt. I expect that after the trial those funds awarded to me will be unfrozen. I also have a condominium in Florida in my name. While the divorce is pending, neither that condo nor the Avon home can be sold, but after the trial, these houses can be sold. . . . I would like to have the foreclosure held off until after the judge's decision is rendered. If I am awarded the Avon home, then I will either bring everything current or will put the house on the market. It is valued at around $400,000 (we do have current appraisals) and there is certainly enough money to pay off the mortgage and any penalties. The Florida home may also be put on the market and that home does not have a mortgage. If I am not awarded the home, the foreclosure can continue and again, there is certainly enough equity to cover any outstanding debt."

Write to us as soon as possible. We must hear from you no later than [sixty] days after we sent you the first bill on which the error or problem appeared."

The plaintiff's divorce was finalized in 2004.[3] On January 12, 2005, the plaintiff's son, Jeffrey Nappo, called the defendant and said that the plaintiff "never took a mortgage out" and that her "ex-husband took this loan out in her name." The defendant advised Jeffrey Nappo that it needed written authorization from the plaintiff to speak with him regarding the plaintiff's account. The next day, the plaintiff called the defendant and claimed that "her ex-husband forged her signature on this loan."

In February, 2005, the plaintiff submitted an affidavit of forgery to the defendant in which she claimed that her former husband had signed her name to all of the documents associated with the account. Upon reviewing the affidavit and the plaintiff's account, however, the defendant declined to pursue her claim. It concluded that given the age of the loan, the numerous contacts the plaintiff had with the defendant throughout the life of the loan and the lack of a police report or other legal documentation to substantiate the plaintiff's forgery allegations, her claim of forgery was the result of a marital dispute rather than fraudulent activity.[4]

In an amended complaint filed January 17, 2007, the plaintiff alleged that she never borrowed any moneys against the credit line and sought a release of the defendant's mortgage and an order pursuant to General Statutes § 47-31 quieting title in her name.[5] She claimed that her former husband had forged her signature[6] on all of

---

[3] The plaintiff was represented by counsel during her divorce, and her divorce attorney corresponded with the defendant regarding the home equity credit line and mortgage on the plaintiff's property in Avon.

[4] A representative of the defendant testified that it is not uncommon in the mortgage industry for an allegation of forgery to arise when there is a marital dispute.

[5] The plaintiff raised additional claims under General Statutes §§ 49-8 and 49-13, but the court concluded that both statutes were inapplicable, and the plaintiff does not challenge that conclusion on appeal.

[6] Despite a judicial admission in her amended complaint that she executed a mortgage in favor of the defendant to secure a home equity credit line, the plaintiff appears to have claimed at trial that the mortgage was never

the documents associated with the account, including all of the checks drawn on the account,[7] and that she did not know of or participate in the advancement of funds. She argued that the mortgage should be released because no funds were ever advanced to her, and, as a result, the mortgage secured no debt. Following a three day trial,[8] the court rendered judgment in favor of the defendant. The court concluded that the plaintiff had executed a valid mortgage and found that she had knowledge of the advancements and allowed them to occur.[9]

On appeal, the plaintiff acknowledges that the mortgage was properly executed but claims that she did not participate in or have knowledge of the advancement of funds by check against the line of credit and argues that the court's finding to the contrary is clearly erroneous. We disagree.

The plaintiff's claim presents a question of fact, and "[t]he trial court's findings [of fact] are binding upon this court unless they are clearly erroneous . . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

---

validly executed. She does not reiterate this claim on appeal, and, accordingly, we do not address it.

[7] The plaintiff has repeatedly asserted that "[t]he defendant conceded that the checks had been forged." Although the defendant's attorney acknowledged that the defendant was "not disputing that the signatures on the checks do not appear to be [the plaintiff's]," the record, including the portion of the transcript cited by the plaintiff, does not disclose that the defendant conceded that the checks had been forged. We remind the plaintiff's counsel of his duty of candor to the court.

[8] During the trial, both parties acknowledged that the debt remained unpaid.

[9] In response to a request by the plaintiff, the court further articulated that she had "acknowledged the advancements and allowed them to occur contemporaneously with the advancements of the funds."

(Internal quotation marks omitted.) *Cifaldi* v. *Cifaldi*, 118 Conn. App. 325, 330–31, 983 A.2d 293 (2009). "Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *Jay* v. *A & A Ventures, LLC*, 118 Conn. App. 506, 511, 984 A.2d 784 (2009).

In this case, overwhelming evidence supports the court's finding. The plaintiff admitted that she executed the documents necessary to secure the credit line and create the mortgage. She did so in the presence of a licensed attorney and her daughter-in-law, who served as witnesses. The record also reveals that the plaintiff (1) requested that the defendant issue checks on the account and mail them to her, (2) made numerous calls to the defendant to discuss the status of the credit line, to make payments on the account and to apply for payment mitigation, (3) made at least thirty payments on the account, (4) told a representative of the defendant that she obtained the mortgage for her husband, (5) acknowledged her responsibility to repay the debt in the 2004 letter to the defendant and (6) received statements from the defendant every month for over five years, from March, 2000, to July, 2005, which indicated the account balance, recent account activity and the amount due.[10] The record further indicates that the plaintiff never reported the checks lost or stolen, never filed a criminal complaint against her former husband

---

[10] The plaintiff testified that she opened all mail that was addressed to her. The account statements were addressed to the plaintiff and mailed to her at her home in Avon.

related to the alleged forgery and did not report any problems with the mortgage or credit line until 2005, years after the checks were drawn on the plaintiff's account. Finally, the transcript discloses that the plaintiff's testimony is fraught with contradiction.[11] It is axiomatic that as the sole arbiter of credibility, the trial court is "free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) Id., 514.

In light of the foregoing, the court's finding, that the plaintiff knew of the advancements, allowed them to occur and accepted responsibility for the debt, is well supported by the record, and the court's decision upholding the validity of the mortgage is proper.[12]

The judgment is affirmed.

In this opinion the other judges concurred.

[11] For example, the plaintiff testified that the signature on the credit line application, mortgage and note "appear[ed] to be" hers and that she was fully competent to sign the documents when she did. She also testified, however, that she did not execute documents related to a mortgage, could not recall applying for the credit line and "had no knowledge of even signing the thing." Despite executing the documents in the presence of an attorney, the plaintiff testified that she did not think that she was present when the documents were signed, did not know about the checks or that the money was gone and that her signature "was put there somehow."

[12] The plaintiff also proposes that the court must have relied on the doctrine of ratification to reach its decision and argues that the court's reliance on ratification was improper because the defendant did not raise the doctrine at trial. The court, however, never mentioned the doctrine of ratification or stated that it was relying on ratification to reach its conclusion. "Speculation and conjecture have no place in appellate review." *Narumanchi* v. *DeStefano*, 89 Conn. App. 807, 815, 875 A.2d 71 (2005). "[W]here the trial court's decision is ambiguous, unclear or incomplete, an appellant must seek an articulation . . . or this court will not review the claim." (Internal quotation marks omitted.) *Testone* v. *C. R. Gibson Co.*, 114 Conn. App. 210, 223, 969 A.2d 179, cert. denied, 292 Conn. 914, 973 A.2d 663 (2009). Although the plaintiff sought articulation on two other points, she did not ask the court if it had applied the doctrine of ratification. We therefore do not review the plaintiff's claim.