WADE A. SHEPARD *v.* WETHERSFIELD OFFSET, INC., ET AL.
(AC 27083)

Flynn, C. J., and Harper and Rogers, Js.

Argued September 25—officially released December 12, 2006

*Robert M. Fitzgerald*, for the appellant (plaintiff).

*G. Randall Avery*, for the appellees (defendants).

*Opinion*

ROGERS, J. The plaintiff, Wade A. Shepard, appeals from the decision of the workers' compensation review board (board) affirming the finding and dismissal of his claim for temporary partial disability benefits under General Statutes § 31-308 (a) by the workers' compensation commissioner (commissioner). On appeal, the plaintiff claims that the board improperly affirmed the erroneous findings made by the commissioner that the plaintiff failed to prove that his medical condition prevented him from working as a pressman and that he suffered a loss of earning capacity.[1] Because we conclude that the plaintiff failed to prove any loss of earning

---

[1] The plaintiff also urges this court to announce a new burden shifting test under § 31-308 (a) in which the defendants, his former employer, Wethersfield Offset, Inc., and its workers' compensation insurance carrier, Utica Mutual Insurance Company, would bear the burden of proving the plaintiff's earning capacity after he has shown that he secured work. This we cannot do. See *State* v. *Lee*, 53 Conn. App. 690, 701, 734 A.2d 136 (1999).

capacity under § 31-308 (a), we affirm the decision of the board.

The following facts were found by the commissioner. The plaintiff worked as a pressman for the defendant Wethersfield Offset, Inc., a commercial printer, for approximately fifteen years. The plaintiff was diagnosed and treated for contact dermatitis on January 12, 1999, and continued to work as a pressman at Wethersfield Offset, Inc., until August, 2001, earning his regular salary. The plaintiff maintains that he developed contact dermatitis from the chemicals at work, and he ceased working for Wethersfield Offset, Inc., for that reason. Wethersfield Offset, Inc., and its insurer, the defendant Utica Mutual Insurance Company, accepted liability for the plaintiff's contact dermatitis although no voluntary agreement has ever been entered into between the parties. Beginning in August, 2001, the defendants commenced payment of temporary partial disability benefits at the basic compensation rate of $517.96 per week.

In April, 2002, the plaintiff accepted a job as a salesperson at a company named Forms for Business. This position involved soliciting and servicing accounts for a company that produced business forms. The plaintiff testified that he has not interviewed for any graphic arts design positions since taking the position with Forms for Business.

The plaintiff claimed before the commissioner that he had an ongoing wage loss as a result of his contact dermatitis and should receive temporary partial benefits from April 15, 2002, to May 17, 2004, on the basis of the differential between his current wages and the wages he would have earned had he been able to continue in his former position. At the hearing, evidence was presented regarding the wages of various comparable employees who still worked at Wethersfield Offset, Inc. The president of the company testified, however,

that the volume of work had decreased since the plaintiff left due to a change in business needs of its top client.

The commissioner took note of the plaintiff's testimony that he was not certain what causes his continued flare-ups of dermatitis and speculates that his current flare-up may have resulted from his coming into contact with antifreeze or cold air. The plaintiff testified that, to his knowledge, the exact cause of his dermatitis has not been determined. The commissioner found that the plaintiff failed to submit evidence that his contact dermatitis diminished his earning capacity and did not present any conclusive medical evidence that his condition was of such a nature that he could not continue working as a pressman. The commissioner, dismissing the claim, concluded that the plaintiff had not met his burden of proof for loss of earning capacity required under § 31-308 (a). The plaintiff subsequently filed a motion to correct the findings and dismissal, which was denied.

Thereafter, the plaintiff appealed to the board. The plaintiff claimed that the commissioner improperly had found that he was not entitled to temporary partial disability benefits under § 31-308 (a) in light of the evidence adduced at the hearing. The board affirmed the commissioner's decision, and this appeal followed.

The standard of review in workers' compensation appeals is well established. "When the decision of a commissioner is appealed to the board, the board is obligated to hear the appeal on the record of the hearing before the commissioner and not to retry the facts. . . . The commissioner has the power and duty, as the trier of fact, to determine the facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or

unreasonably drawn from them. . . . Our scope of review of the actions of the board is similarly limited. . . . The role of this court is to determine whether the . . . [board's] decision results from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Parisi* v. *Yale University,* 89 Conn. App. 716, 722, 874 A.2d 852 (2005).

"[O]n review of the commissioner's findings, the [review board] does not retry the facts nor hear evidence. It considers no evidence other than that certified to it by the commissioner, and then for the limited purpose of determining whether or not the finding should be corrected, or whether there was any evidence to support in law the conclusions reached. It cannot review the conclusions of the commissioner when these depend upon the weight of the evidence and the credibility of witnesses. . . . The finding of the commissioner cannot be changed unless the record discloses that the finding includes facts found without evidence or fails to include material facts which are admitted or undisputed. . . . It [is] the commissioner's function to find the facts and determine the credibility of witnesses . . . and a fact is not admitted or undisputed merely because it is uncontradicted. . . . A material fact is one that will affect the outcome of the case." (Internal quotation marks omitted.) *Chesler* v. *Derby,* 96 Conn. App. 207, 220, 899 A.2d 624, cert. denied, 280 Conn. 909, 907 A.2d 88 (2006).

The plaintiff claims that the board improperly affirmed the erroneous finding of the commissioner that the plaintiff failed to prove that his dermatitis prevented him from working as a pressman. We agree. The record discloses that the finding fails to take into account material facts that were admitted by the defendants. The defendants accepted liability for the plaintiff's

claim of dermatitis, although no voluntary agreement ever was entered into between the parties. The defendants' counsel stated during the hearing that the plaintiff's claim of contact dermatitis was accepted and was not being challenged.[2]

Notwithstanding the commissioner's erroneous finding regarding the plaintiff's ability to work as a pressman, the plaintiff cannot prevail on his claim that the board improperly affirmed the commissioner's dismissal.[3] We are not persuaded by the plaintiff's claim that the commissioner improperly found that he failed to meet his burden of proof for loss of earning capacity benefits under § 31-308 (a).

The burden of proving entitlement to benefits under § 31-308 (a) rests on the claimant, and "[t]he trial commissioner must decide whether a claimant has met that burden as a factual matter, and possesses the sole authority to determine which, if any, of the medical, documentary or testimonial evidence is reliable." *Milliot* v. *Yale University*, 4527 CRB-3-02-5 (May 14, 2003). "Though no one method of demonstrating entitlement to benefits, such as work searches, is statutorily mandated; *Shimko* v. *Ferro Corp.*, [40 Conn. App. 409, 414, 671 A.2d 376, cert. denied, 236 Conn. 916, 673 A.2d 1143 (1996)]; it is necessary as a practical matter that

---

[2] The plaintiff's counsel remarked at the formal hearing before the commissioner: "I think the parties agree there's a contract of employment between the parties and that [the plaintiff] suffered a contact dermatitis injury in the course of his employment with Wethersfield Offset; is that correct?" The defendants' counsel replied: "Your Honor, it has been treated as an accepted claim regarding contact dermatitis. So, that's not being litigated here."

[3] The plaintiff's counsel conceded at oral argument that in order to prevail on his overall claim that the board improperly affirmed the commissioner's dismissal, he needed to demonstrate both that the board improperly affirmed the commissioner's finding that the plaintiff failed to prove that his medical condition prevented him from working as a pressman *and* that he suffered a loss of earning capacity.

a claimant establish an earning capacity in order to prove wage loss." *Thomas* v. *Greenwich*, 4697 CRB-7-03-7 (August 10, 2004).

General Statutes § 31-308 (a) provides in relevant part: "If any injury for which compensation is provided under the provisions of this chapter results in partial incapacity, the injured employee shall be paid a weekly compensation equal to seventy-five per cent of the difference between the wages currently earned by an employee in a position comparable to the position held by the injured employee before his injury . . . and the amount he is able to earn after the injury . . . ."

"Partial incapacity benefits are available when the employee is able to perform some employment, but [is] unable fully to perform his or her customary work . . . . Accordingly, partial incapacity benefits are available when an actual wage loss has resulted from the injury, providing a wage supplement for the difference between the wages the worker would have earned, but for the injury, and the wages the worker currently is able to earn." (Internal quotation marks omitted.) *Starks* v. *University of Connecticut*, 270 Conn. 1, 9, 850 A.2d 1013 (2004); see General Statutes § 31-308 (a).

The amount the plaintiff is able to earn after the injury should be limited to wages earned from Wethersfield Offset, Inc., or, if he is forced into another occupation because of his injury, wages realized from that substitute employment. See *Emerick* v. *Monaco & Sons Motor Sales, Inc.*, 145 Conn. 101, 105, 139 A.2d 156 (1958) (interpreting General Statutes § 3044d, now § 31-308).

There was evidence from which the commissioner could have concluded that the plaintiff did not suffer a decrease in earning capacity under § 31-308 (a).[4] Evidence was admitted to show that a pressman who

---

[4] The board, in concluding that the plaintiff did not earn less at Forms for Business than he would have earned at Wethersfield Offset, Inc., based its decision on incorrect mathematical calculations. The board assumed an

worked at Wethersfield Offset, Inc., in 2002 through 2004, who operated the same printing press as the defendant, earned at most during that time $19.50 per hour after a raise in early 2004. According to payroll summaries, pressmen at Wethersfield Offset, Inc., worked, at most, forty hours per week at regular wages and earned time and one half for overtime. The president of Wethersfield Offset, Inc., testified that the workload for the Halm printing press, which the plaintiff had operated while he worked there, decreased dramatically after the plaintiff left in August, 2001, due to the loss of a large account that bought its own Halm printing press. He also testified that as a result of the decrease in workload of the Halm printing press, the press is not run on the weekends and the employee who currently operates it does not earn much overtime pay. According to the payroll summary of the employee who operated the Halm printing press at the time of the hearing, that employee worked on average 4.8 hours per week in overtime. The commissioner was free to credit that undisputed evidence. Assuming a forty hour work week each week, at $19.50 per hour, and with 4.8 hours per week in overtime, such an employee would earn $47,860.80 per year, which is less than the plaintiff's

hourly wage of $20 and nine hours per week of overtime pay, which it stated was the average of the company's top pressman who was qualified to run equipment that the plaintiff could not operate. The board calculated that the plaintiff would have earned approximately $55,640, $14,040 of which would have been overtime pay.

The board concluded that "the owner also testified that the press that the [plaintiff] operated no longer runs on weekends due to the diminished workload. . . . If one takes away even half of that overtime pay, the plaintiff would not have earned less at his current job for the year 2003 than he would have earned at Wethersfield Offset, Inc."

Applying the board's assumed rate and a 50 percent overtime reduction, however, the plaintiff would have received $48,620 at Wethersfield Offset, Inc., which is more than the $48,070 he earned in wages for the year 2003 at Forms for Business. Despite this, there still was evidence from which the commissioner could have concluded, as a factual matter, that the plaintiff did not have a diminished earning capacity under § 31-308 (a).

wages of $48,070[5] at Forms for Business, as reflected in his 2003 federal income tax return. Accordingly, the commissioner had evidence from which it could be found that the plaintiff had not established loss of earning capacity under § 31-308 (a).

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.

---

[5] The board stated that the evidence showed that the plaintiff had earned $48,080 in wages for the year 2003, his first full year at Forms for Business, on the basis of his federal income tax return. The plaintiff's federal income tax return, however, showed his wages as $48,070 in 2003.