******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# BEULAH GARDNER *v.* DEPARTMENT OF MENTAL HEALTH AND ADDICTION SERVICES ET AL.
## (AC 45594)

Moll, Cradle and Suarez, Js.

*Syllabus*

The plaintiff, who had sustained a compensable work-related injury during her employment, appealed to this court from the decision of the Compensation Review Board, which upheld the decision of the Workers' Compensation Commissioner granting the defendant employer's request to convert the plaintiff's benefits for temporary partial disability, pursuant to statute (§ 31-308 (a)), to permanent partial disability benefits, pursuant to § 31-308 (b), after medical examinations determined that the plaintiff had attained maximum medical improvement and had a light-duty work capacity. The plaintiff claimed that the board had improperly determined that, because she had reached maximum medical improvement, she could no longer receive temporary partial disability benefits pursuant to § 31-308 (a). Although the plaintiff contended that the Supreme Court in *Osterlund* v. *State* (129 Conn. 591) had recognized the discretion of a commissioner to award ongoing temporary partial disability benefits to a claimant who had reached maximum medical improvement, the board reasoned that, although the holding in *Osterlund* had been codified in § 31-308 (d), that statutory provision had been repealed by the legislature in 1993. On the plaintiff's appeal to this court, *held* that the board properly interpreted the authority afforded the commissioner pursuant to § 31-308 (a) and upheld the commissioner's determination: despite the plaintiff's claim that the commissioner had discretion pursuant to § 31-308 to award ongoing wage loss disability benefits in lieu of permanent partial disability benefits after she attained maximum medical improvement, this court determined that, although neither § 31-308 nor other provisions of the Workers' Compensation Act (§ 31-275 et seq.) expressly address whether a commissioner is authorized to continue to award temporary partial disability benefits in lieu of permanent partial disability benefits after the injured employee reaches maximum medical improvement, the legislature omitted such authority in 1993 when it revised § 31-308 to eliminate subsection (d) and has statutorily (§ 31-295 (c)) required that permanent partial disability benefits be paid after the date of maximum medical improvement; moreover, § 31-308 (a) limits the duration of disability benefits and § 31-295 (c) requires that permanent partial disability benefits pursuant to § 31-308 (b) shall be paid after the date of maximum medical improvement; furthermore, prior decisions of this state's courts bolstered this court's determination that temporary partial disability benefits are available under § 31-308 (a) only until the claimant reaches maximum medical improvement.

Argued September 11, 2023—officially released January 9, 2024

*Procedural History*

Appeal from the decision of the Workers' Compensation Commissioner for the Fifth District approving the conversion of the plaintiff's temporary partial disability benefits to permanent partial disability benefits and denying ongoing temporary partial disability benefits, brought to the Compensation Review Board, which affirmed the commissioner's decision, and the plaintiff appealed to this court. *Affirmed.*

*Justin A. Raymond*, for the appellant (plaintiff).

*Lisa Guttenberg Weiss*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney

general, and *Matthew Larock*, deputy associate attorney general, for the appellee (named defendant).

*Robert F. Carter* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Dana M. Hrelic* and *Meagan A. Cauda* filed a brief for the Connecticut Business and Industry Association et al. as amici curiae.

*Opinion*

SUAREZ, J. In this workers' compensation dispute, the plaintiff, Beulah Gardner, appeals from the decision of the Compensation Review Board (board) affirming the decision of the Workers' Compensation Commissioner for the Fifth District (commissioner) of the Workers' Compensation Commission[1] approving a form 36[2] that was filed by the defendants, the Department of Mental Health and Addiction Services (department) and Gallagher-Bassett Services, Inc.,[3] and denying the plaintiff's claim for ongoing temporary partial disability benefits pursuant to General Statutes § 31-308 (a).[4] The plaintiff claims that the board improperly determined as a matter of law that, in light of the undisputed fact that she had reached maximum medical improvement, she could no longer receive benefits pursuant to § 31-308 (a). We affirm the decision of the board.

The commissioner set forth the following findings of fact. "On April 19, 2016, [the plaintiff] suffered a compensable work-related injury to her left wrist while employed with the [department]. The injury occurred while [the plaintiff] was restraining a patient when her hand became caught, causing inflammation and pain. . . .

"At the time of the injury, [the plaintiff] was employed as a forensic treatment specialist at Whiting Forensic Institute. Her job involved care and treatment of mentally ill patients. The [plaintiff] is eligible to receive 100 percent benefits pursuant to General Statutes § 5-142 (a) for injuries suffered as a result of physically restraining patients of the facility. . . .

"On May 8, 2018, [a workers' compensation commissioner] approved a voluntary agreement accepting compensability of the April 19, 2016 injury. Dr. Stanley Foster is listed as the authorized treating physician for the injury, listed as follows: Left nondominant wrist intersection syndrome and [carpal tunnel syndrome]. . . .

"The compensation rate for temporary total disability was established at $1256 [per week], based upon concurrent wages of $2440.30 per week. The compensation rate for temporary partial disability and permanent partial disability was agreed upon at $998 [per week]. . . .

"At the time of the compensable injury, [the plaintiff] was working concurrently for Sheriden Woods [Health Care Center] in Bristol . . . . These wages are factored in the voluntary agreement. . . .

"Following the incident, [the plaintiff] received conservative medical treatment and was paid indemnity benefits. On May 17, 2017, she underwent a left-hand trigger thumb release surgery by [Foster]. Following this procedure, the [plaintiff] continued to have persistent pain. She thereafter came under the care of Dr.

Duffield Ashmead, who performed a second surgical procedure on March 8, 2019. Her symptoms improved thereafter. . . .

"On October 4, 2019, the [department] sent a separation letter to [the plaintiff] pursuant to General Statutes § 5-244. This letter indicated that, because she had been provided permanent restrictions by [Ashmead] that did not allow her to continue in her position at Whiting Forensic Hospital, she could be transferred to a less arduous position with another agency within the state of Connecticut. In addition, this communication provided that [the plaintiff] could resign from her job or seek disability retirement. . . .

"On October 28, 2019, the [plaintiff] presented to Dr. Pavel Straznicky for an examination at the request of the [department]. As a result of the examination and review of records, [Straznicky] diagnosed post-traumatic chronic synovitis of the left wrist. [Straznicky] further opined that [the plaintiff] has attained maximum medical improvement relative to the compensable injury and resulting surgical procedures.[5] He opined that the [plaintiff] had a light-duty work capacity with a twenty pound lifting restriction on her left hand and indicated she could not restrain patients. . . .

"On March 11, 2020, [Ashmead] also opined that the [plaintiff] had attained maximum medical improvement, as it was nearly one year postsurgical intervention. He provided an 8 percent permanent partial impairment rating to the [plaintiff's] left wrist.[6] On work capacity, [Ashmead] indicated the following: [The plaintiff] is once again judged capable of work at a light level on nonhand intensive or repetitive physical demand, lifting, pushing, pulling, not to exceed twenty pounds. She seems an ideal candidate for vocational redirection. . . .

"On May 21, 2020, the [defendants] filed a form 36 Notice of Intention to Reduce or Discontinue Payments seeking to convert temporary partial disability benefits to permanent partial disability benefits due to [Ashmead's] opinion that the [plaintiff] had attained maximum medical improvement and had a light-duty work capacity. . . .

"In addition to the filing of the form 36, the [defendants] sent to the [plaintiff], through her attorney, voluntary agreements recognizing the 8 percent rating as provided by [Ashmead]. This agreement establishes March 11, 2020, as the date of maximum medical improvement." (Footnotes added.)

The plaintiff and the defendants appeared before the commissioner at a formal hearing on December 14, 2020. The commissioner framed the issues before him as (1) whether the form 36, which was filed on May 21, 2020, seeking to convert the plaintiff's indemnity benefits from temporary partial disability pursuant to

§ 31-308 (a) to permanent partial disability pursuant to § 31-308 (b) should be granted, and (2) whether the plaintiff was entitled to temporary partial disability payments pursuant to § 31-308 (a). The commissioner aptly summarized the positions of the parties: "It is the [plaintiff's] position that a workers' compensation commissioner has discretion pursuant to . . . § 31-308 to award ongoing wage loss disability benefits in lieu of permanent partial disability benefits after an injured worker has attained maximum medical improvement. In support of this position, the [plaintiff] is relying on the Supreme Court's ruling in *Osterlund* v. *State*, 129 Conn. 591 [30 A.2d 393] (1943). It is her position that *Osterlund* holds that, when a claimant has been assigned a permanent partial disability, the words of the statute compel the conclusion that the commissioner has the discretion to award continuing wage loss benefits in lieu of permanent partial disability [benefits] based upon factors including work limitations, concurrent employment, loss of function, and its disparate impact on her earning potential. . . .

"In support of her position, the [plaintiff] entered evidence of records of employment contracts as proof of her inability to obtain employment as a direct result of the compensable injury. These job search forms represent approximately fifty-one weeks of unsuccessful attempts to garner employment within her level of disability. . . .

"It is the [defendants'] position that the [plaintiff] is not eligible for unlimited temporary partial disability benefits pursuant to § 31-308 (a) as a matter of law. They are of the position that wage loss benefits cease once an injured worker has been placed at maximum medical improvement and, at that point, permanent partial disability becomes due. After payment of this benefit expires, the injured worker has a right to seek additional discretionary wage loss benefits pursuant to General Statutes § 31-308a. However, these postspecific discretionary benefits have statutory limitations. The [defendants] are of the further position that the Supreme Court's decision in *Osterlund* only applies to temporary total disability benefits and that . . . § 31-308 (a) was enacted after *Osterlund*, thereby rendering the decision moot."

The commissioner, expressly relying on the reports and opinions of Ashmead and Straznicky, found that the plaintiff had attained maximum medical improvement following the April 19, 2016 injury. The commissioner found that the plaintiff "has suffered permanent work restrictions directly related to her compensable injury that have rendered her incapable of returning to her job as a forensic treatment specialist." The commissioner rendered his decision on June 2, 2021, in which he approved the form 36, filed on May 21, 2020,[7] seeking to convert indemnity benefits from temporary partial

disability pursuant to § 31-308 (a) to permanent partial disability pursuant to § 31-308 (b), effective May 21, 2020. The commissioner denied the plaintiff's claim for ongoing temporary partial disability benefits in reliance on § 31-308 (b).[8]

Thereafter, the plaintiff appealed from the commissioner's decision to the board. The plaintiff, in her appeal to the board, did not take issue with the commissioner's findings of fact but, rather, challenged the commissioner's interpretation of § 31-308. The board addressed the plaintiff's reliance on § 31-308 (b) and our Supreme Court's decision in *Osterlund*, which explicitly recognized the authority of a commissioner to award ongoing temporary partial disability benefits to a claimant who had reached maximum medical improvement. In interpreting language in § 31-308 (b) on which the plaintiff relied, however, the board was guided by the fact that, in 1967, *Osterlund*'s holding was subsequently codified in § 31-308 (d), but that, in 1993, our legislature repealed subsection (d) of the statute. See Public Acts 1993, No. 93-228 (P.A. 93-228). Considering this "legislative activity," the board, in a thorough analysis, rejected the plaintiff's reliance on *Osterlund* and her contention that § 31-308 (b) should be interpreted to afford the commissioner the authority to award ongoing temporary partial disability benefits under § 31-308 (a). This appeal followed.

"The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny. . . . Whe[n] . . . [a workers' compensation] appeal involves an issue of statutory construction that has not yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision." (Citation omitted; internal quotation marks omitted.) *Cochran* v. *Dept. of Transportation*, 220 Conn. App. 855, 865–66, 299 A.3d 1247 (2023).

The plaintiff's claim requires us to determine whether a commissioner has the authority pursuant to § 31-308 to award ongoing temporary partial disability benefits

to a claimant who has reached maximum medical improvement. Thus, the claim presents this court with an issue of statutory interpretation. The plaintiff does not challenge the facts found by the commissioner, on which the board relied, and the present claim does not hinge on whether the commissioner has correctly applied the correct and governing legal standard to the subordinate facts. Instead, the claim requires us to determine if the board correctly interpreted the governing statute that it then applied to the facts of the present case.

The department urges us to afford deference to the board's statutory interpretation, arguing that the commissioner and the board "adopted a time-tested interpretation [of § 31-308] that has been subjected to judicial scrutiny." In support of this contention, the department cites to this court's decision in *Testone* v. *C. R. Gibson Co.*, 114 Conn. App. 210, 969 A.2d 179, cert. denied, 292 Conn. 914, 973 A.2d 663 (2009). Although, in *Testone*, this court stated that "[t]emporary partial disability payments under . . . § 31-308 (a) are available until the injured worker has reached maximum medical improvement"; (internal quotation marks omitted) id., 220; it did so in the context of a claim concerning a workers' compensation commissioner's admission and reliance on three independent medical examination reports. Id., 215. The court in *Testone* was not called on to resolve the distinct issue of whether a commissioner has the authority under § 31-308 (a) to award temporary partial disability payments after a claimant has reached maximum medical improvement. On this ground, as well as our own research, we are not persuaded that the board followed a time-tested interpretation of the statute that has been subjected to judicial scrutiny. Because we are convinced that this appeal raises an issue of statutory interpretation of first impression, our review is plenary. See, e.g., *Bergeson* v. *New London*, 269 Conn. 763, 769, 850 A.2d 184 (2004).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . If, however, when considered in relation to other statutes, the statutory text at issue is susceptible to more than one plausible interpretation, we may appropriately consider extratextual evidence." (Citation omitted; internal quotation

marks omitted.) *Williams* v. *New Haven*, 329 Conn. 366, 375, 186 A.3d 1158 (2018).

Before turning to the text of the statute, it is helpful to set forth the following relevant principles as explained by our Supreme Court: "[W]e are mindful of the distinction between incapacity benefits and disability benefits. Benefits available under the [Workers' Compensation Act (act), General Statutes § 31-275 et seq.] serve the dual function of compensating for the disability arising from the injury and for the loss of earning power resulting from that injury. . . . Compensation for the disability takes the form of payment of medical expenses; General Statutes § 31-294d; and specific indemnity awards, which compensate the injured employee for the lifetime handicap that results from the permanent loss of, or loss of use of, a scheduled body part. . . .

"Compensation for loss of earning power takes the form of partial or total incapacity benefits. . . . Incapacity, as that term is used under the [act], means incapacity to work, as distinguished from the loss or loss of use of a member of the body. . . .

"We have noted that § 31-308 specifically provides that compensation for permanent partial disability shall be in addition to the usual compensation for total incapacity. While we have held that the [act] prohibits concurrent payment of benefits for permanent partial disability and temporary total [incapacity] . . . it is clear that these two types of benefits compensate an employee for different types of loss . . . and that the payment of [General Statutes] § 31-307 temporary total [incapacity] benefits does not discharge the obligation to pay § 31-308 permanent partial disability benefits at some point in the future. . . .

"Because the two types of benefits compensate an employee for distinct losses, entitlement to the two benefits is triggered by different factors. Entitlement to incapacity benefits depends on the employee's capacity to work. General Statutes §§ 31-307 (a) and 31-308 (a). As for entitlement to disability benefits, because the extent of that award necessarily depends on both the establishment of a permanent disability and the extent of the disability, [w]e have long held that an injured worker has a right to a permanent partial disability award once he or she reaches maximum medical improvement. . . . In *Panico* v. *Sperry Engineering Co.*, [113 Conn. 707, 714, 156 A. 802 (1931)], we explained that a permanent partial award became due when the worker reached maximum improvement. See also *Stapf* v. *Savin*, 125 Conn. 563, 565, 7 A.2d 226 (1939). In *Osterlund* v. *State*, [supra, 129 Conn. 597–600], we overruled *Panico* and *Stapf* to the extent that they precluded a commissioner from exercising his or her discretion to continue total disability payments to a worker who had reached maximum medical improve-

ment but was still totally disabled from working. In *Osterlund*, we explained that there might be, in case of a partial loss of function, a great disproportion between the amount of specific compensation provided and the actual effect of the injury, either from the standpoint of the employee's earning capacity or the physical impairment he suffered. . . . We further explained, however, that in a case . . . in which the worker has reached maximum medical improvement and his permanent partial disability award has thereby vested . . . the commissioner does not have discretion to deny such an award if the worker requests that award . . . . Once an employee whose right to a disability benefit award has vested because that employee has reached maximum medical improvement requests payment of the disability benefits, the commissioner no longer has discretion to deny the award of the disability benefits, regardless of whether the employee remains totally incapacitated." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Churchville* v. *Bruce R. Daly Mechanical Contractor*, 299 Conn. 185, 192–95, 8 A.3d 507 (2010).

"Partial incapacity benefits are available when the employee is able to perform some employment, but [is] unable fully to perform his or her customary work . . . . The duration of partial incapacity benefits is limited by statute. . . . Conversely . . . [t]otal incapacity benefits, unlike partial incapacity benefits, are unrestricted as to duration." (Citations omitted; internal quotation marks omitted.) *Starks* v. *University of Connecticut*, 270 Conn. 1, 9, 850 A.2d 1013 (2004). "Partial incapacity benefits are available when the employee is able to perform some employment, but [is] unable fully to perform his or her customary work . . . . Although an employee who is partially incapacitated may, in fact, not be working, the employee must be available to work, if suitable employment is available. . . . Accordingly, partial incapacity benefits are available when an actual wage loss has resulted from the injury, providing a wage supplement for the difference between the wages the worker would have earned, but for the injury, and the wages the worker currently is able to earn. . . . The duration of partial incapacity benefits is limited by statute. . . .

"Conversely, total incapacity is defined as the inability of the employee, because of his injuries, to work at his customary calling or at any other occupation which he might reasonably follow. . . . Total incapacity benefits, unlike partial incapacity benefits, are unrestricted as to duration." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Rayhall* v. *Akim Co.*, 263 Conn. 328, 350–51, 819 A.2d 803 (2003).

A commissioner has the authority to award *temporary partial disability* payments pursuant to § 31-308.[9] Specifically, subsection (a) of § 31-308 provides: "If any

injury for which compensation is provided under the provisions of this chapter results in partial incapacity, the injured employee shall be paid a weekly compensation equal to seventy-five per cent of the difference between the wages currently earned by an employee in a position comparable to the position held by the injured employee before his injury, after such wages have been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contributions Act in accordance with [General Statutes §] 31-310, and the amount he is able to earn after the injury, after such amount has been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contributions Act in accordance with [§] 31-310, except that when (1) the physician, physician assistant or advanced practice registered nurse attending an injured employee certifies that the employee is unable to perform his usual work but is able to perform other work, (2) the employee is ready and willing to perform other work in the same locality and (3) no other work is available, the employee shall be paid his full weekly compensation subject to the provisions of this section. Compensation paid under this subsection shall not be more than one hundred per cent, raised to the next even dollar, of the average weekly earnings of production and related workers in manufacturing in the state, as determined in accordance with the provisions of [General Statutes §] 31-309, and shall continue during the period of partial incapacity, but no longer than five hundred twenty weeks. If the employer procures employment for an injured employee that is suitable to his capacity, the wages offered in such employment shall be taken as the earning capacity of the injured employee during the period of the employment."

A commissioner has the authority to award *permanent partial disability* payments pursuant to § 31-308 (b), which provides in relevant part: "With respect to the following injuries, the compensation, in addition to the usual compensation for total incapacity but in lieu of all other payments for compensation, shall be seventy-five percent of the average weekly earnings of the injured employee . . . after such earnings have been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contributions Act made from such employee's total wages received during the period of calculation of the employee's average weekly wage . . . but in no case more than one hundred per cent, raised to the next even dollar, of the average weekly earnings of production and related workers in manufacturing in the state . . . or less than fifty dollars weekly. All of the following injuries include the loss of the member or organ and the complete and permanent loss of use of the member or organ referred to . . . .

"If the injury consists of the loss of a substantial part of a member resulting in a permanent partial loss of the

use of a member, or if the injury results in a permanent partial loss of function, the [commissioner] may, in the [commissioner's] discretion, in lieu of other compensation, award to the injured employee the proportion of the sum provided in this subsection for the total loss of, or the loss of use of, the member or for incapacity or both that represents the proportion of total loss or loss of use found to exist, and any voluntary agreement submitted in which the basis of settlement is such that proportionate payment may, if otherwise conformable to the provisions of this chapter, be approved by the [commissioner] in the [commissioner's] discretion. . . ."[10]

Our interpretation of the act "is guided by the principles underlying Connecticut practice in [workers'] compensation cases: that the legislation is remedial in nature . . . and that it should be broadly construed to accomplish its humanitarian purpose. . . . We, therefore, do not construe the [act] to impose limitations on benefits that the act itself does not specify clearly." (Internal quotation marks omitted.) *Rayhall* v. *Akim Co.*, supra, 263 Conn. 357–58.

As reflected in the statutory language previously set forth, the duration of partial disability benefits is limited by statute to the lesser duration of either the period of partial incapacity or 520 weeks. Moreover, General Statutes § 31-295 (c) provides that permanent partial disability benefits pursuant to § 31-308 (b) shall be paid after the date of maximum medical improvement of the injured employee.[11] As stated previously in this opinion, the act has been interpreted to preclude the concurrent payment of incapacity benefits and disability benefits. Although the *duration* of partial disability benefits is expressly limited by the act, and the act provides that permanent partial disability payments become *payable* after an injured employee has attained maximum medical improvement, neither the plain language of § 31-308 nor the other provisions of the act expressly address whether a commissioner is authorized to continue to award temporary partial disability benefits in lieu of permanent partial disability benefits after an injured employee has reached maximum medical improvement. With respect to this issue, the act does not set forth either an express grant of authority or an express limitation of authority to a commissioner.

The legislative history of § 31-308 sheds light on the issue before us. In 1967, the legislature amended § 31-308 to expressly afford a workers' compensation commissioner the authority to award either ongoing temporary partial disability benefits or permanent partial disability payments after a claimant had reached maximum medical improvement. As a result of further revisions to the statute subsequent to the 1967 amendment, the legislature, through § 26 of No. 91-32 of the 1991 Public Acts, ultimately codified this grant of authority in sub-

section (d) of § 31-308.[12] Twenty-six years after the 1967 amendment, the legislature, as part of a series of cost-cutting reforms to the act, eliminated the then existing subsection (d) in its entirety.[13] See P.A. 93-228, § 19. Thus, the legislature revoked the grant of authority it had bestowed upon commissioners to award partial compensation for lost earnings after a claimant had reached maximum medical improvement.

In light of the fact that § 31-308 does not expressly authorize the payment of temporary partial disability payments to a claimant who has reached maximum medical improvement, and the legislative history strongly evinces the legislature's will to extinguish the authority of commissioners to award such benefits upon a claimant's having reached permanency status, we concur with the board's reasonable interpretation of the statute.

As she did before the board, the plaintiff argues that *Osterlund* v. *State*, supra, 129 Conn. 591, compels the opposite conclusion.[14] The plaintiff argues that, in *Osterlund*, our Supreme Court "held that, when a claimant has been assigned a permanent partial disability, the statute unequivocally grants the [commissioner] the discretion to award continuing wage loss benefits instead of permanent partial disability benefits."

In *Osterlund*, our Supreme Court stated that, "where there is a total or partial incapacity followed by a permanent partial loss of function the situation is governed by the portion of the statute we have quoted, which provides that, in such a case, the commissioner 'may, in his discretion, in lieu of other compensation' make an award of specific compensation. The thought back of this provision was evidently that there might be, in a case of partial loss of function, a great disproportion between the amount of specific compensation provided and the actual effect of the injury, either from the standpoint of the employee's earning capacity or the physical impairment he suffered. Thus, if a desk worker suffered such an injury, as did the plaintiff in this case, it might not at all affect his earning capacity and might constitute a very slight permanent injury from the standpoint of physical impairment. In other instances the reverse of this might be true. In the case of a partial loss of function of one of the members specified in the statute, the commissioner is called upon, when the stage of maximum improvement has been reached, to exercise his sound judgment in deciding whether to award specific compensation upon the basis fixed in the statute or to permit the weekly compensation for incapacity to continue." *Osterlund* v. *State*, supra, 129 Conn. 600.

We are not persuaded by the plaintiff's reliance on *Osterlund*. To the extent that the plaintiff argues that *Osterlund* reasonably should be interpreted to apply to the commissioner's authority to award ongoing temporary partial disability benefits, it would be difficult to

envision how any such authority could be deemed to exist after 1993, when, as we have already discussed in this opinion, our legislature revised § 31-308 to omit the authority to award such benefits that had been codified in subsection (d) of the statute.

Last, we note that our interpretation of the statutes is bolstered by the analysis set forth in prior opinions. In *Rayhall* v. *Akim Co.*, supra, 263 Conn. 328, our Supreme Court addressed the issue of "whether a claimant who has sustained injuries to two members of the body arising from the same incident must receive compensation for permanent partial disability as soon as the claimant has reached permanent status with respect to one member, even if the claimant is temporarily partially incapacitated with respect to the other member." Id., 353–54. In resolving this issue, our Supreme Court stated that it was "mindful . . . of two well settled principles: first, that double compensation is prohibited under the [act] and, second, that a claimant cannot receive concurrently a specific indemnity award and incapacity benefits for the same incident." Id., 354. The court reasoned that the plaintiff was entitled to receive incapacity benefits until he had achieved maximum medical improvement with respect to both legs. Id., 357. The court stated: "It is clear that if, as a result of the condition of his left leg, the plaintiff were temporarily totally incapacitated, in other words, unable to work at all, he would be entitled to receive incapacity benefits regardless of whether his right leg had achieved maximum medical improvement. . . . We see no logic in treating the plaintiff's temporary partial incapacity in a substantively different manner." (Citation omitted; emphasis omitted.) Id. We agree with the department that, although our Supreme Court did not directly address the issue of whether a claimant could receive temporary partial disability benefits under § 31-308 (a), the very fact that the court deemed it necessary to address the issue before it reflects its adherence to the principle that the claimant is unable to receive such benefits upon reaching maximum medical improvement.

Also, as we have stated previously in this opinion, in *Testone*, this court, in analyzing a claim that certain medical reports should not have been admitted in a workers' compensation case, noted that "[t]emporary partial disability benefits under . . . § 31-308 (a) are available until the injured worker has reached maximum medical improvement . . . ." (Internal quotation marks omitted.) *Testone* v. *C. R. Gibson Co.*, supra, 114 Conn. App. 220. Relying on this principle, the court concluded under the facts of the case before it that "the commissioner was presented with sufficient evidence, absent the contested reports, to determine that the plaintiff had reached maximum medical improvement and was therefore not entitled to disability benefits under § 31-308 (a)." Id.

For the foregoing reasons, we agree with the board's interpretation of the authority afforded the commissioner pursuant to § 31-308 (a). Thus, we conclude that the board properly upheld the commissioner's approval of the form 36 that was filed by the defendants, and the commissioner's denial of the plaintiff's claim for ongoing temporary partial disability benefits pursuant to § 31-308 (a).

The decision of the Compensation Review Board is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 31-275d (a) (1), which became effective on October 1, 2021, provides in relevant part that, "[w]herever the words 'workers' compensation commissioner', 'compensation commissioner' or 'commissioner' are used to denote a workers' compensation commissioner in [several enumerated] sections of the general statutes, [including sections contained in the Workers' Compensation Act, § 31-275 et seq.] the words 'administrative law judge' shall be substituted in lieu thereof . . . ."

In light of the fact that the commissioner rendered his decision, as well as his ruling on the plaintiff's motion to correct his decision, prior to October 1, 2021, in the present case, we will refer to the workers' compensation commissioner who approved the defendants' form 36 in this matter as "the commissioner."

[2] " 'A [f]orm 36 is a notice to the compensation commissioner and the [plaintiff] of the intention of the employer and its insurer to discontinue [or reduce] compensation payments. The filing of this notice and its approval by the commissioner are required by statute in order properly to discontinue [or reduce] payments.' . . . *Brinson* v. *Finlay Bros. Printing Co.*, 77 Conn. App. 319, 320 n.1, 823 A.2d 1223 (2003); General Statutes § 31-296 (b)." *Rivera* v. *Patient Care of Connecticut*, 188 Conn. App. 203, 204 n.1, 204 A.3d 761 (2019).

[3] Gallagher-Bassett Services, Inc., is a third-party administrator for the department. Because Gallagher-Bassett Services, Inc., has not participated in this appeal, we refer in this opinion to the department as the defendant and to the department and Gallagher-Bassett Services, Inc., as the defendants where appropriate.

[4] Although the legislature has amended § 31-308 (a) since the underlying events at issue; see Public Acts 2021, No. 21-196, § 59; that amendment has no bearing on the merits of this appeal. We therefore refer in this opinion to the current revision of § 31-308 (a).

[5] "The date of maximum medical improvement is the point at which the *permanency* of the condition and, hence, the *right* to permanent disability benefits, is established, and it is also the point at which the *degree* of permanent impairment (loss of, or loss of use of a body part) can be assessed, which will determine the employer's payment obligations . . . ." (Emphasis in original.) *Brennan* v. *Waterbury*, 331 Conn. 672, 695–96, 207 A.3d 1 (2019); see also 3 A. Sevarino, Connecticut Workers' Compensation After Reforms (7th Ed. 2017) § 6.08, p. 981 ("[a]s a general proposition maximum medical improvement has been reached when the curative effect of medical treatment has plateaued").

[6] Permanent partial disability generally has been defined as "[a] disability partial in character but permanent in quality resulting from [the] loss or loss of use of body members or from the partial loss of use of the employee's body. . . . Where permanent partial disability is defined in terms of impairment, it is based on physical disability rather than loss of earning capacity, and higher post-injury wages than pre-injury wages do not bar compensation for permanent partial disability. The compensation is for permanent loss or impairment of a bodily function rather than for a wage loss." (Footnotes omitted.) 2 Modern Workers Compensation (November, 2023) § 200:9, Permanent partial disability, generally; see also *Churchville* v. *Bruce R. Daly Mechanical Contractor*, 299 Conn. 185, 192, 8 A.3d 507 (2010) ("[p]ermanent partial schedule awards are based on medical condition after maximum improvement has been reached and ignore wage loss entirely" (internal quotation marks omitted)).

[7] After the commissioner rendered his decision, the plaintiff filed a motion to correct the decision. The commissioner granted the motion to correct in

part and thereby rectified two scrivener's errors that appeared in his original memorandum of decision.

[8] Before the commissioner and, later, the board, the plaintiff relied on the portion of § 31-308 (b) that provides that, where a permanent partial loss of the use or function of a member exists, "the [commissioner] may, in the [commissioner's] discretion, in lieu of other compensation, award to the injured employee the proportion of the sum provided in this subsection . . . ." The plaintiff argued that this language should be interpreted such that it affords the commissioner the discretion to continue to award temporary partial disability benefits to a claimant in lieu of permanent partial disability benefits following maximum medical improvement.

[9] Previously in this opinion, we have discussed the material distinction between incapacity and disability benefits afforded by the act. See *Churchville* v. *Bruce R. Daly Mechanical Contractor*, supra, 299 Conn. 192–95. Our Supreme Court, however, has noted that "the term ' "disability" ' can be used in the [act] to refer to a permanent impairment of a body part . . . or to incapacity to work . . . ." (Citation omitted.) *Pizzuto* v. *Commissioner of Mental Retardation*, 283 Conn. 257, 260 n.2, 927 A.2d 811 (2007). The court observed that "[t]he two types of temporary partial [incapacity] benefits provided within [c]hapter 568 are found at [§] 31-308 [a] and [§] 31-308a. [Section] 31-308 [a] benefits or pre-specific are awarded before the injured worker is eligible to receive or has been paid his or her [§] 31-308 [b] permanent partial [incapacity] benefits, while [§] 31-308a benefits or post-specific are awarded after the injured worker's eligibility to receive [§] 31-308 [b] benefits has been established and exhausted. . . . Indeed, the alternative maximum duration of benefits under § 31-308a of 520 weeks is the same maximum duration prescribed for partial incapacity benefits under § 31-308 (a)." (Internal quotation marks omitted.) Id., 279–80.

Although § 31-308 (a) compensates a claimant's temporary partial *incapacity*, or inability to fully perform his or her customary work, courts in prior appeals typically have referred to the benefit afforded by § 31-308 (a) as a temporary partial *disability* benefit. See, e.g., id., 279 ("[a]s for the two awards of temporary partial disability benefits [one pre-specific indemnity, one post-specific indemnity], both legally depend upon the claimant having suffered a loss in her earning capacity as a result of her compensable injury" (internal quotation marks omitted)); *Starks* v. *University of Connecticut*, supra, 270 Conn. 29 (referring to retirement credit for employees who were receiving "temporary partial disability under § 31-308 (a)"); *Testone* v. *C. R. Gibson Co.*, supra, 114 Conn. App. 220 ("[t]emporary partial disability benefits under . . . § 31-308 (a) are available until the injured worker has reached maximum medical improvement" (internal quotation marks omitted)); *Shepard* v. *Wethersfield Offset, Inc.*, 98 Conn. App. 682, 685, 910 A.2d 993 (2006) (referring to plaintiff's claim that commissioner improperly found "he was not entitled to temporary partial disability benefits under § 31-308 (a)"), cert. denied, 281 Conn. 911, 916 A.2d 51 (2007); *Shimko* v. *Ferro Corp.*, 40 Conn. App. 409, 411, 671 A.2d 376 (referring to plaintiff's claim for "temporary partial disability benefits under . . . § 31-308 (a)), cert. denied, 236 Conn. 916, 673 A.2d 1143 (1996). Consistent with this terminology, which is reflected in the decisions of the commissioner and the board in this case, as well as in the parties' briefs, we will refer to the benefit afforded by § 31-308 (a) as a temporary partial disability benefit.

[10] Additionally, workers who are receiving permanent partial disability benefits but who cannot gain employment or who earn less wages than they would have been earning if they had not sustained injury may seek wage differential benefits, payable at the discretion of the commissioner, pursuant to § 31-308a.

[11] General Statutes § 31-295 (c) provides in relevant part: "If the employee is entitled to receive compensation for permanent disability to an injured member [of the body] in accordance with the provisions of subsection (b) of section 31-308, the compensation shall be paid to him beginning not later than thirty days following the date of the maximum improvement of the member or members and, if the compensation payments are not so paid, the employer shall, in addition to the compensation rate, pay interest at the rate of ten per cent per annum on such sum or sums from the date of maximum improvement. The employer shall ascertain at least monthly whether employees are entitled to compensation because of a loss of wages as a result of the injury and, if there is a loss of wages, shall pay the compensation. . . ."

[12] See General Statutes (Rev. to 1993) § 31-308 (d), which provides: "In case of an injury to any portion of the body, referred to in subsection (b)

of this section, or to a phalanx or phalanges of the thumb, finger or toe, the commissioner may, in his discretion, award compensation for the proportionate loss or loss of use of the member of the body affected by the injury. Where the injury results in a loss of earnings and it is in the interests of the injured workman to be paid on that basis notwithstanding that the injured member may have attained maximum improvement, the commissioner shall, in his discretion, direct that the claimant be paid partial compensation for loss of earnings, as provided in this section, if it is in the interest of the injured employee to be paid the partial compensation even if the injured member may have attained maximum improvement. Partial compensation shall be paid under this subsection for as long as the loss of earnings continues. If the injured employee's loss of earnings ends, he shall be paid for permanent injuries in accordance with the provisions of subsection (b) of this section, minus any payments for partial compensation, for weeks subsequent to the date on which maximum improvement in the injured member had been attained. If there is no loss of earnings resulting from the injury, payments shall be made in accordance with the provisions of subsection (b) of this section."

[13] Our Supreme Court has noted that "the principal thrust of [the] reforms [undertaken by the legislature in 1993] was to cut costs in order to address the spiraling expenses required to maintain the system." *Rayhall* v. *Akim Co.*, supra, 263 Conn. 346. "[T]he legislature reformed the workers' compensation laws in 1993 with a fundamental purpose of effect[ing] a dramatic decrease in the cost of workers' compensation in Connecticut. . . . To reduce the cost of workers' compensation, the legislature introduced a number of systemic changes, including a reduction in the rate of compensation, the elimination of certain cost-of-living adjustments and a reduction in the number of compensable injuries." (Citation omitted; internal quotation marks omitted.) *Gartrell* v. *Dept. of Correction*, 259 Conn. 29, 42, 787 A.2d 541 (2002).

[14] We note that, in her argument before this court, the plaintiff also focuses on the following italicized portion of § 31-308 (b): "[The commissioner] may . . . *in lieu of other compensation*, award to the injured employee the proportion of the sum provided in this subsection for the total loss of, or the loss of the use of, the member or for incapacity or both that represents the proportion of total loss or loss of use found to exist . . . ." (Emphasis added.)

To the extent that the plaintiff argues that the language "in lieu of other compensation" reflects a legislative intent to authorize an award of temporary partial disability benefits even after a claimant has achieved maximum medical improvement, we observe that our Supreme Court has reasoned, contrary to the plaintiff's position, that an identical phrase, which appeared earlier in § 31-308 (b), "merely was intended to prohibit double payment of permanency awards and to address our case law precluding a claimant suffering incapacity following a permanent disability from being able to thereafter collect total incapacity benefits." *Rayhall* v. *Akim Co.*, supra, 263 Conn. 356. We are not persuaded that the statutory language on which the plaintiff relies should be afforded a different interpretation.

———————————————